PETER RAHIKKA *vs.* JOHN GRONSTROM *et al.*

JULY 9, 1938.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J. This is a bill in equity brought by Peter Rahikka against the respondents John Gronstrom and Fannie Gronstrom, husband and wife, and the respondent Harold Prince, to set aside a deed from the Gronstroms to Prince as a conveyance without legal consideration and in fraud of creditors. The bill also prays for the cancellation of a lease from Prince to the Gronstroms of the premises conveyed by the deed, and for the appointment of a receiver, with power to sell the real estate and apply the surplus remaining after paying a certain mortgage, in satisfaction of a judgment which the complainant holds against the Gronstroms. The answer of the three respondents denied that

the deed from the Gronstroms to Prince was without legal consideration or that it was in fraud of creditors.

The cause was heard in the superior court on bill, answer and proof. The trial justice, in a rescript subsequently filed by him, granted the prayer of the bill and a decree was duly entered in accordance with his decision. The respondents have appealed to this court, claiming that the decision of the trial justice is against the law and the evidence and the weight thereof.

It appears in evidence that on July 13, 1932, the complainant brought an action in assumpsit against the Gronstroms and attached the property described in the bill now before us in that action; that on January 4, 1935, he recovered judgment for $1532.06, and that execution subsequently issued. The record in the instant case is incomplete as to what happened to the execution. The sworn bill states that an execution was issued on February 25, 1935, and that it was returned on June 25, 1936, "wholly unsatisfied."

The testimony of the assistant clerk of the superior court for the county in which the case was tried merely shows that the execution, which he said was filed with the papers in the case, was returned "unsatisfied." During the trial counsel agreed that the execution was levied on April 19, 1935, which is the date of the execution mentioned in a certain deed from the Gronstroms to the respondent Prince in the instant case, to which we will presently refer.

We are at a loss to understand why the execution was not put in evidence or else read into the record in its entirety. This court is entitled to a record that is reasonably complete, and proper practice requires that this be done in all cases. However, the instant case is in equity and we are reluctant to remand such a case to the superior court without final disposition, unless absolutely necessary. After careful consideration of the record as it stands, the admissions of counsel in that record, and their attitude in the hearing before us, our conclusion is that the complainant lost the benefit of his

attachment either because he failed to levy the execution within six months and the attachment was thereby discharged under the provisions of general laws 1923, chapter 353, sec. 19, or else the levy of the execution was abortive because of noncompliance with the provisions of G. L. 1923, chap. 355, secs. 11, 13.

But even though the complainant lost the benefit of his attachment, his judgment remained in force, unaffected by anything done under the execution. See *East Greenwich Inst. for Savings* v. *Allen,* 22 R. I. 337, 340. In the circumstances, the complainant stands in the position of an unsecured judgment creditor, claiming that the Gronstroms fraudulently conveyed their property to Prince, who was not a *bona fide* purchaser, to defeat his rights as a judgment creditor.

It appears in evidence that, after the complainant had recovered his judgment, on January 4, 1935, the Gronstroms brought an action in assumpsit against the complainant and that in that action the jury, on May 7, 1936, returned a verdict in favor of the defendant, the complainant here. Within a week thereafter, on May 13, 1936, the Gronstroms conveyed their real estate to the respondent Prince by warranty deed, and the latter, under date of May 18, 1936, executed a written lease of the premises to the former for a period of ten years at the rental of $125 a year "to be paid on the last day of each and every year." The deed and the lease were duly recorded.

Both the deed and the lease, drawn on the usual printed forms, were prepared by Oscar E. Barber, town clerk of the town of Richmond, who did not testify. The deed sets forth that the Gronstroms "for consideration paid, grant to Harold Prince . . . a certain tract of land or farm located in the Town of Richmond, . . . containing by estimation sixty (60) acres, . . . with a dwelling house, barn and all other buildings and improvements thereon . . . ." Following a description by metes and bounds, it reads: "Said estate is free from all

incumbrances except a mortgage to The Federal Land Bank, of Springfield, Mass., for the amount of $1,364.03. Also an attachment of Peter Rahikka under date of July 13th, A. D. 1932. Also an Execution under date of April 19th, A. D. 1935."

The evidence shows that one of the buildings on this farm was used by Gronstrom in carrying on a liquor business, and that in connection with that business he had on the premises certain "peanut vending machines", which belonged to Prince and which the latter attended on the average of about once a week. A real estate expert, testifying for the respondents, said that the fair market value of the farm was between $1870 and $2070, and that a rental of $120, as set in the lease from the Gronstroms to Prince, was reasonable. Another expert, who testified for the complainant, placed the fair market value of the farm at $4525, and the fair rental thereof at $300 a year.

The testimony of Prince, who had known the Gronstroms for some fifteen years, in substance is that he bought the farm for $500 and assumed the mortgage; that he paid John Gronstrom the $500 in cash for the deed; and that he gave the Gronstroms a lease of the premises for ten years, at a rental of $125 a year, payable at the end of each year, because Gronstrom "wanted a place to stay. He didn't want to be looking for another home right away." Concerning the complainant's attachment and execution, Prince testified that, although he knew of their existence, he made no inquiry about them as he "understood that was all settled."

It may be noted here that the Gronstroms were permitted to remain in uninterrupted possession of the premises, and that Prince, a business man, had not asked for a receipt for the $500 which he claims to have paid to John Gronstrom, and further that he could not remember when the deed was "handed" to him. Furthermore, although Prince testified that he had assumed the mortgage, there is no reference

in the deed to that effect, and there is nothing in the record to show that Prince did in fact assume the mortgage.

John Gronstrom testified that after the deed was put on record by him, Prince came to the farm and paid him the $500 "in the chicken coop." Although he said that Mrs. Gronstrom was present when the money was paid, she did not testify. He testified further that he used the greater part of the $500, which he received from Prince, in paying bills, mostly liquor bills, and the rest he used in buying food and clothing for the family. He was unable, however, to produce any receipts or written memoranda showing these alleged payments. It is clear from Gronstrom's testimony that he refuses to recognize the validity of the complainant's judgment and that he does not intend to pay it.

The trial justice granted the prayer of the bill in a carefully prepared rescript. The language of the rescript clearly shows that the trial justice was convinced that the transaction between the Gronstroms and Prince was not in good faith, and that Prince, knowing that the Gronstroms intended to put their farm beyond the reach of the complainant, participated in their scheme to defraud the complainant of the benefit of his judgment. The trial justice does not find that Prince paid the $500 to the Gronstroms, for on this point his rescript reads, "the alleged purchase price of $500.00, if paid at all, was paid in cash."

The credibility of the witnesses was an important factor in this case. The trial justice, who had the advantage of seeing and hearing them testify, did not believe either Gronstrom or Prince. We have examined the record carefully and we cannot say that the trial justice was clearly wrong in his decision.

The respondents' appeal is denied and dismissed, the decree appealed from is affirmed and the cause is remanded to the superior court for further proceedings.

*Clarence E. Roche,* for complainant.

*Adolph Gorman, Edward W. Morris,* for respondents.